UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| LINDA J R.,[1]<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 23-cv-03934-RMI<br><br>**ORDER REMANDING CASE**<br>Re: Dkt. Nos. 24, 26 |

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision denying her the back-pay benefits to which she would normally have been entitled after approval of her Supplemental Security Income ("SSI") claim under Title XVI of the Social Security Act. *See* Admin. Rec. at 21-26.[2] Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council (*see id*. at 4-9), thus, the ALJ's decision is the "final decision" of the Commissioner of Social Security which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both Parties have consented to the jurisdiction of a magistrate judge (dkts. 8, 10), and the matter has been fully briefed (*see* dkts. 24, 26, 29). For the reasons stated below, this case is remanded for the calculation and immediate payment of back-pay benefits.

**LEGAL STANDARDS**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] The Administrative Record ("AR"), which is independently paginated, has been filed in two attachments to Docket Entry #9. *See* (dkts. 9-1 through 9-2).

conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout administrative law and directs courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**SUMMARY OF THE RELEVANT EVIDENCE**

The factual background of this case has been adequately recited by the Parties (*see* Pl.'s Br. (dkt. 24) at 5-11; *see also* Def.'s Br. (dkt. 26) at 1-3), and the court sees no reason to rehash those details here except in summary form. In short, on the basis of an application for benefits filed in September of 2018, Plaintiff received an award notice dated March 25, 2021. *See* AR at 21, 23. Given Plaintiff's disability, and the expectation that her SSI payments would amount to approximately $1,000 per month – in the lead-up to the disability finding and the award of SSI benefits, her attorney loaned her approximately $900 per month for a 26-month period of time. *See* Pl.'s Br. (dkt. 24) at 6-7. Plaintiff's counsel, a 78-year-old sole practitioner, agreed to provide this loan to his client casually and informally – that is, without an up-front written agreement – and he "provided for loans to [Plaintiff] on a more or less monthly basis because [Plaintiff] was obliged to pay her rent every month." *Id*. at 7. Plaintiff's counsel "recognized that [Plaintiff] was disabled and without income, and she would be evicted from her apartment and rendered homeless if he were not able to help," however, counsel furnished these loans with the expectation of "repayment

1  from her back pay." *Id.* "At the time of [Plaintiff's] application for SSI benefits in October 2018,
2  she had virtually no income with which to pay her rent (at that time approximately $525 per
3  month) or to pay for food, clothing or other expenses." *Id*. at 8. Further, given that "[h]er friends
4  [and] family members could not or would not help[,] [i]t was a certainty that she would have been
5  evicted from her low rent apartment and been rendered homeless along with her cat." *Id*. In fact,
6  Plaintiff's counsel reports having "previously defend[ed] [Plaintiff] in an unlawful detainer action
7  brought by the management of her apartment complex for default in payment of rent." *Id*. Thus,
8  finding his client in dire straits, counsel advanced the loan in question; and, neither Plaintiff nor
9  her counsel imagined that winning her award would take over two years. *Id*. at 8-9. In the end,
10 however, the Social Security Administration denied all back pay benefits based on the notion that
11 the sums extended to Plaintiff by her counsel were gifts rather than loans. *Id*. at 9-10. As such, her
12 attorney, who "worked without pay or compensation during the entirety of her battle and continues
13 to do so even now[,] has yet to receive even a penny of compensation [or repayment] for helping
14 his client with her social security case." *Id*. at 10.

## THE ALJ DECISION

16 Relying on a provision from an internal operational manual (POMS SI 01120.220), the
17 ALJ in this case stated that an informal cash loan must meet all of the following criterial to be
18 considered a *bona fide* loan: (1) it must be enforceable under state law; (2) a loan agreement must
19 be in effect at the time of the transaction; (3) there must be an acknowledgement of an obligation
20 to repay; (4) there must be a plan or schedule for repayment; and, (5) the repayment must be
21 feasible. *See* AR at 23. As to the first of these five points, the ALJ found that because California
22 considers oral loans to be enforceable, the first element was satisfied. *Id*. As to the second element
23 (a loan agreement existing at the time of the transaction), the ALJ found that this element was not
24 satisfied based on murky reasoning to the effect that an omission on Plaintiff's part (in a form
25 completed in November of 2018) as far as mentioning the loan payments in question "cannot be
26 overcome by allegations of memory issues," however, the ALJ offers no explanation or further
27 details for that assertion. *See id*. The ALJ also found the third element (acknowledgement of
28 obligation to repay) "not fully satisfied," because, "[w]hile correspondence and memorialization

3

of the alleged loan indicate that the claimant would repay as much as she could from expected backpay, the amount of the alleged loan is unclear at best." *Id*. The ALJ noted that Plaintiff and her attorney have agreed on the total amount of the loan based on average monthly advances of $900; however, the ALJ discredited the accounts of Plaintiff and her counsel because of the assertion that counsel and Plaintiff "have failed to provide any [precise] accounting of the total amounts of each alleged loan [and] [a] bona fide loan would be expected to have some sort of account, particularly by the lender and especially when the loan amount is excessive as it is in this case." *Id*. at 23-24. The ALJ also found that the fourth element (plan or schedule for repayment) was unsatisfied because repayment could only be effected if Plaintiff received SSI benefits (which, the ALJ found to be speculative), and because "[i]t is also difficult to establish a realistic repayment plan without any accounting and no indication of the total loan amount." *Id*. at 24. In other words, the ALJ concluded that the Parties' agreement that counsel had advanced Plaintiff an average of $900 per months for 26-months (*see* Pl.'s Br. (dkt. 24) at 5) was unpersuasive. *See* AR at 24. Likewise, the ALJ found that the fifth element (the feasibility of repayment) was not satisfied because, accordingly to the ALJ, "neither party is certain of the [precise] amount that was actually 'loaned.'" *Id*. at 5-6. For these reasons, the ALJ concluded that counsel had simply gifted these sums to his client, and on that basis, Plaintiff's SSI award did not include back pay between October 2018 through March of 2021.

## DISCUSSION

As an initial matter, the court will note that the internal operating manual (POMS SI 01120.220) relied upon by the ALJ to make the above-recited determination "does not have the force of law, [and is merely] persuasive authority." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006). Even under the POMS guidance, the court finds that the ALJ erred in concluding that counsel's loan to his client in this case was a gift. However, the court finds the POMS guidance here to be of limited – if any – persuasive value under the circumstances of this case because it upends the law of gifts; because it unduly defines loans too narrowly; and, because of the unnecessary narrowness and myopia in its scope, it would contravene good public policy in discouraging an attorney (such as counsel in this case) from throwing a much needed

4

1   lifeline to a client (such as Plaintiff in this case) when the failure to do so would have had
2   potentially catastrophic consequences.
3         Case law in California has defined the elements of a gift as follows: (1) competency of the
4   donor to contract; (2) a voluntary intent on the part of the donor to make a gift; (3) delivery, either
5   actual or symbolical; (4) acceptance, actual or imputed; (5) complete divestment of all control by
6   the donor; and (6) lack of consideration for the gift. *See e.g., Jaffe v. Carroll*, 35 Cal. App. 3d 53,
7   59 (Cal. App. 2nd Dist. 1973). Under this approach, no one would disbelieve counsel (who was a
8   stranger to Plaintiff before taking her case) when he has repeatedly asserted that he never
9   entertained the idea of making any such gift, or that Plaintiff ever considered these sums to have
10  been simply gifted to her; instead, the record is clear that counsel only loaned Plaintiff the sums in
11  question to tide her over in consideration of her agreement to repay him. *See also Hernandez v.*
12  *Comm'r*, 490 U.S. 680, 687 (1989) ("It observed first that the term 'charitable contribution' in [26
13  U.S.C.] § 170 is synonymous with the word "gift," which case law had defined "as a voluntary
14  transfer of property by the owner to another without consideration therefor.") (quoting *DeJong v.*
15  *Commissioner*, 36 T. C. 896, 899 (1961), aff'd, 309 F. 2d 373 (9th Cir. 1962)). Of course, the fact
16  that these payment were loans rather than gifts was repeatedly corroborated by statements from
17  Plaintiff and her counsel; however, the POMS approach to this question so narrowly construes the
18  definition of a *bona fide* loan, that the ALJ in this case was able to simply presume that counsel's
19  loan to his client was an inexplicable act of charity despite strenuous assertions to the contrary by
20  both the lender and the borrower. For this reason, the undersigned finds that the POMS approach
21  to differentiating between a loan and a gift – at least in the case of arms-length strangers such an
22  attorney and his client – is unwieldy and unpersuasive. The payments, on the basis of which
23  Plaintiff's back pay benefits (between October 2018 and March 2021) were denied, were clearly
24  loans – not gifts.
25        However, as mentioned, even under the POMS approach, the ALJ's reasoning was deeply
26  flawed and not based on substantial evidence. As to the first of the POMS elements, the ALJ
27  correctly noted that oral loan agreements are enforceable in California. *See* AR at 23. Of course,
28  this is so because the Statute of Frauds (in California) only requires a note or memorandum for

1  loans in excess of $100,000 which are "not primarily for personal, family, or household purposes,
2  made by a person engaged in the business of lending or arranging for the lending of money or
3  extending credit." *See* Cal. Civ. Code § 1624(a)(7). As to the second element (a loan agreement
4  existing at the time of the transaction), the court finds that the ALJ's finding that there was no oral
5  loan agreement in place at the time counsel made these monthly payments was erroneous. First,
6  the ALJ's reasoning that Plaintiff's failure to mention the loan payments on a November 2018
7  form cannot be explained by memory issues was conclusory and unattended with any detail or
8  explanation; second, the ALJ failed to indicate the upshot of the omission in the form (in other
9  words, the ALJ failed to explain *how* there was any logical connection between Plaintiff's
10 omission on that form and the notion that there was no oral agreement for counsel to loan his
11 client these sums at the time the sums were tendered). Accordingly, the court finds that the ALJ's
12 finding as to the second POMS element was not based on substantial evidence.
13      Similarly, the ALJ's reasoning as to the third element (acknowledgement of obligation to
14 repay) was flawed because the ALJ discredited Plaintiff's assertions, and those of her counsel,
15 simply because the ALJ found that Plaintiff and her counsel had failed to submit a satisfactory
16 accounting for the exact sum of the monthly loan advances. Once again, the ALJ's finding is
17 logically disconnected from the essence of the third POMS element. The third POMS element
18 simply inquires about whether there was an acknowledgement of the obligation to repay. The ALJ
19 found that there was such an acknowledgement on Plaintiff's part – however, as was the case with
20 the second element, the ALJ chose to disregard that acknowledgement for what the court finds to
21 be an irrelevant reason. The ALJ similarly found that the fourth element (plan or schedule for
22 repayment) was unsatisfied by erecting an unreasonable barrier in stating that "[i]t is also difficult
23 to establish a realistic repayment plan without any accounting and no indication of the total loan
24 amount." *See* AR at 24. In other words, the ALJ concluded that the Parties' assertions about an
25 agreement that counsel had advanced Plaintiff an average of $900 per months for 26-months (*see*
26 Pl.'s Br. (dkt. 24) at 5) was "unpersuasive" because it did not involve a precise down-to-the-penny
27 amount. *See id.* The court finds the ALJ's finding in this regard to be similarly untethered from
28 any substantial evidence in the record. Once again, counsel and Plaintiff both asserted that

6

1    Plaintiff would repay the loan when she could, and the court finds that the specification of the

2    amount involved is sufficiently specific to place the arrangement well within the confines of the

3    loan rubric, rather than that of a gift. That is enough – and to require more would be unreasonable.

4    *See e.g., Tennyson v. Comm'r of SSA*, 2024 U.S. Dist. LEXIS 113282, *15 ("Here, Plaintiff owes

5    his mother a debt that is <u>*sufficiently specific*</u> to be enforceable. . . [t]he amount of that debt is

6    between $19,000 and $25,000.") (emphasis added). Lastly, the ALJ found that the fifth element

7    (the feasibility of repayment) was not satisfied because, according to the ALJ, "neither party is

8    certain of the [precise] amount that was actually 'loaned.'" *Id*. at 5-6. Once again, the Parties were

9    sufficiently certain as to the amounts involved in order to satisfy the feasibility of repayment, and

10   the ALJ's determination to the contrary was neither logically persuasive nor based on substantial

11   evidence.

12       It should be noted that other courts in this circuit – in cases involving members of the same

13   family (let alone arms-length strangers such as attorneys and their clients) – have reached similar

14   conclusions and remanded cases for immediate calculation and payment of back payments. *See*

15   *e.g., Tennyson v. Comm'r of SSA*, 2024 U.S. Dist. LEXIS 113282, *15 (Plaintiff stated that he

16   would repay his mother with a lump sum of retroactive funds. Plaintiff also started making

17   payments to his mother "whenever possible," including with "some government stimulus checks"

18   and "a couple hundred dollars a month any time he had the ability." Plaintiff repaid $800 without

19   receiving any backpay SSI benefits, and the court found that "Plaintiff's intent to use anticipated

20   SSI benefits to pay back the loan seems to be one of few realistic options for SSI applicants and

21   supports the determination [] that the plan is feasible."); *see also Michael L. v. Berryhill*, No. 3:18-

22   CV-01115-YY, 2019 U.S. Dist. LEXIS 143520, 2019 WL 3992270, at *2-*6, *15 (D. Or. Aug.

23   23, 2019) (The SSI applicant owed $41,800 after he received in-kind support (food and shelter)

24   from his mother. The applicant submitted an affidavit stating his intentions to "pay toward the

25   loan with any additional SSI back payments he receives, as well as 'pay some amount of the

26   remainder of [his] SSI every month . . . to chip away at whatever remained of [his] debt . . . .'" To

27   that end, the district court determined that "the SSI applicant would be able to pay off his debt

28   within 17 years, which "is no less feasible than a 15-or 30-year mortgage.").

As to the nature of the remand, "[t]he decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). The Ninth Circuit applies the "credit-as-true" rule if three elements are met: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record is fully developed and no outstanding issues exist that would make further proceedings useful; and (3) if "no outstanding issues remain and further proceedings would not be useful," only then do we have discretion to find the "relevant testimony credible as a matter of law." *Washington v. Kijakazi*, 72 F.4th 1029, 1041 (9th Cir. 2023) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014)). For the reasons stated herein, the court finds that all three elements are satisfied; thus, remand for an award of back-pay benefits from October 2018 through at least March of 2021 is warranted.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the final decision of the Commissioner of Social Security is **REVERSED**, and this case is **REMANDED** for the immediate calculation and award of back-pay benefits. A separate judgment shall issue.

**IT IS SO ORDERED.**

Dated:  September 18, 2024

ROBERT M. ILLMAN
United States Magistrate Judge